Argued January 12, decided January 13, 1914.

## STATE EX REL. *v.* HOLMAN.

(137 Pac. 771.)

**Jury—Selection of Jury List—Jurisdiction.**

Under Laws of 1913, page 768, Section 3, conferring on the board of county commissioners of Multnomah County all the powers previously exercised by the County Court sitting for the transaction of county business, and page 769, Section 4, conferring on the Circuit Court of the fourth judicial district all the judicial jurisdiction previously exercised by the county judge and county court of Multnomah County, the duty of making a jury list devolves upon the board of county commissioners, being within Section 937, subdivision 9, L. O. L., giving the County Court power to transact county business, and to have the general care and management of county property, funds and business.

En Banc. This is an original application by the state, on the relation of Walter H. Evans, district attorney for the fourth judicial district, for *mandamus* to Rufus C. Holman, as chairman of the board of county commissioners of Multnomah County, and W. L. Lightner and D. V. Hart, county commissioners of Multnomah County, Oregon.

PEREMPTORY WRIT GRANTED.

For the plaintiff there was an oral argument by *Mr. Walter H. Evans,* District Attorney.

For defendant there was an oral argument by *Mr. Conrad P. Olson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

Invoking the original jurisdiction of this court in *mandamus* proceedings, a writ was issued against the defendants who are county commissioners of Multnomah County commanding them to make a jury list for that county, for the current year, or show cause why they have not done so. They have returned the writ certifying that they have not formed a list for the reason, as they contend, that the two acts of March 4, 1913, of the legislative assembly have imposed that duty upon the Circuit Court. The cause has been heard as upon a demurrer to the return. The acts referred to are found on pages 767–770, inclusive, of the Laws of 1913. The legislation mentioned provides for the abolition of the office of county judge for Multnomah County, and for the promotion of the then incumbent of that office to be a circuit judge of the fourth judicial district, comprising that county, to sit in department No. 6 of the Circuit Court, which department was created by the act. The following sections appear in the two statutes.

Section 3: "Upon taking effect of this act, and thereafter, the county commissioners of Multnomah County shall be known as the board of county commissioners of Multnomah County. Said board shall have power to appoint a chairman from among their own number and remove him at pleasure, and shall have and possess, exercise and enjoy all the powers and jurisdiction now possessed, exercised and enjoyed by the county court of Multnomah County, sitting for the transaction of county business": Laws 1913, p. 768.

Section 4: "Upon the taking effect of this act all judicial jurisdiction, power and authority of the county judge and of the County Court of said Multnomah County, as distinguished from such power

and jurisdiction as is exercised in the transaction of county business, shall then, and thereafter, be vested in and exercised by the Circuit Court of said fourth judicial district, and all said matters, causes and proceedings pending in said County Court shall be considered as transferred, continued, heard and disposed of in the said Circuit Court'': Laws 1913, p. 769.

The issue to be determined is whether the work of forming a jury list for that county shall be performed by the board of county commissioners or by the Circuit Court. Under the original Constitution it was provided by Article VII, Section 12, that ''the County Court shall have the jurisdiction pertaining to probate courts, and boards of county commissioners, and such other powers and duties, and such civil jurisdiction not exceeding the amount of value of five hundred dollars, and such criminal jurisdiction not extending to death or imprisonment in the penitentiary, as may be prescribed by law. But the legislative assembly may provide for the election of two commissioners to sit with the county judge whilst transacting county business in any or all of the counties, or may provide a separate board for transacting such business.'' By Section 9 of the same Article: ''All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other court, shall belong to the Circuit Courts; and they shall have appellate jurisdiction and supervisory control over the County Courts, and all other inferior courts, officers, and tribunals.'' Although Article VII was so amended by the plebiscite of November, 1910, as to almost destroy its identity, yet Section 2 of the amendment states that ''the courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted, until otherwise provided by law'': Page xxiv, L. O. L. It is plain that by the legislation in question

a step has been taken in the disintegration of the former system. Confessedly, under the original *régime,* only the County Court could make up a jury list. That duty was not referable in the jurisdiction pertaining to probate courts, nor to civil jurisdiction over controversies between parties, nor yet to authority in criminal matters. It is evidently to be classed in that portion of the jurisdiction of the County Courts pertaining to boards of county commissioners, named in the original Article VII, Section 12. Under the authority of that section, the legislature had provided for the election of two commissioners to sit with the county judge in the transaction of county business. Long usage has construed this section to impose that duty of making up jury lists upon the County Court as composed of a judge and commissioners. It is properly within the terms of Section 937, subdivision 9, L. O. L., whereby it is declared that "the County Court has the authority and powers pertaining to county commissioners to transact county business; that is * * 9. To have the general care and management of the county property, funds, and business, where the law does not otherwise expressly provide."

If it had been the intention either of the Constitution or of the legislation in pursuance thereof to vest the compilation of the jury list in the County Court otherwise than as a board of county commissioners, the law would have expressly provided that the duty should be a judicial function to be performed by the County Court considered solely as a judicial tribunal. Whatever else may be said the formation of a jury list from which Circuit Court jurors are to be drawn never has been a function of that court, and as we believe and so hold, the legislative assembly did not intend to confer that prerogative upon Circuit Courts by the two acts of March 4, 1913.

Conceiving that duty to be in its true spirit, and meaning one incumbent upon the defendants charged with the transaction of county business, it is ordered that a peremptory writ be issued to them commanding them to make up at once a jury list containing at least 2,000 of the most competent and permanent citizens of the county of Multnomah to be chosen from the entire assessment-roll of that county for the year 1913.

All the justices concur, except MR. RAMSEY, not sitting.